BEN S. KAUFMAN AND NATALIE KAUFMAN, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 23748–81.     Filed May 23, 1984.

Ben S. Kaufman, pro se.
*Gregory Roth* and *Paul G. Wilson*, for the respondent.

GOFFE, *Judge*: The Commissioner determined a deficiency of $15,422.27 in petitioners' Federal income tax for the taxable year ending July 31, 1979. We have been asked to decide which tax law governs for purposes of petitioners' capital gains tax-preference-item computation.

### FINDINGS OF FACT

Petitioners, husband and wife, resided in Redondo Beach, Calif., at the time they filed the petition in this case. Petitioners timely filed a joint 1978 Federal income tax return for the taxable year commencing August 1, 1978, and ending July 31, 1979. This is the taxable year in issue.

Petitioners attached a Schedule D to their 1978 tax return on which they reported capital gains in the aggregate amount of $217,802 and claimed a capital gains deduction of $128,583. They reported the remaining balance of $89,219 as income of their Form 1040. On the Form 4625, Computation of Minimum Tax - Individuals, attached to their return, they reported $6,225 as a capital gains tax-preference item and zero as the amount of minimum tax liability, which they then carried over to their Form 1040.

The Commissioner recomputed petitioners' minimum tax liability and determined that they owed an additional $15,422.27 attributable to the "minimum tax." The record does not disclose exactly how the Commissioner arrived at this figure. Petitioners, however, do not take issue with this amount. The explanation attached to the Commissioner's notice of deficiency stated:

Minimum Tax
An error was made in computing the tax on Form 4625. Per Public Law 95–600, Section 421(g), alternative minimum tax applies to taxable years beginning after December 31, 1978. Since your tax year began before December 31, 1978 alternative minimum tax does not apply.

The sale of property giving rise to most of the capital gains in issue occurred in March 1979. Nothing in the record indicates that this property was a principal residence.

OPINION

The Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2763, enacted on November 6, 1978, restricted the minimum tax provisions for 1978 and later years. The then-present 15-percent "add-on tax" continued in force through 1978, taking into account, however, the increase, after October 1978, in the capital gains deduction for individuals. The new alternative minimum tax provisions went into effect for taxable years beginning after 1978. At that time, the 15-percent add-on tax no longer applied to capital gains. Instead, capital gains became part of the new alternative tax computation. That provision of the Revenue Act of 1978 establishing the effective date of the new alternative tax is as follows:

(g) EFFECTIVE DATE.—The amendments made by this section shall apply to taxable years beginning after December 31, 1978, except that the amendment made by paragraph (1) of subsection (b) shall apply to sales and exchanges made after July 26, 1978, in taxable years ending after such date. [Sec. 421(g), Pub. L. 95-600, 92 Stat. 2877.]

The reference to paragraph (b)(1) is to section 421(b)(1) of the Revenue Act of 1978 which relates to gain from the sale or exchange of a principal residence.

Petitioners contend that they have no add-on minimum tax liability arguing that the 15-percent add-on tax no longer applied to capital gains when they sold their property.

The Revenue Act of 1978 did modify the 15-percent add-on tax. First, gain from the sale of a principal residence under section 1034[1] was no longer treated as a capital gains preference item for sales or exchanges occurring after July 26, 1978, in tax years ending after that date. Second, the change in the capital gains deduction (from 50 to 60 percent, see sec. 1202) for sales and exchanges occurring after October 31, 1978, was taken into account in computing the capital gains preference tax for years ending after October 1978. See sec. 57(a)(9)(A).

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended.

Further complicating the matter, there is a transitional rule[2] for taxpayers with taxable years which straddle the capital gains deduction change (Nov. 1, 1978). Under the transitional rule, taxpayers were required to compute their capital gains deduction in the following manner:

(1) 60 percent of the lesser of—
    (A) the net capital gain for the taxable year, or
    (B) the net capital gain taking into account only sales and exchanges after October 31, 1978, plus
(2) 50 percent of the excess of—
    (A) the net capital gain for the taxable year, over
    (B) the amount of net capital gain taken into account under paragraph (1).
[Sec. 402, Pub. L. 95–600, 92 Stat. 2867.]

The sale of property giving rise to the capital gains in issue occurred in March of 1979. Petitioners' taxable year runs from August 1, 1978, and ends July 31, 1979; thus, their taxable year does straddle the capital gains deduction change.

The dates signaling these modifications may have led to confusion about the effective date of the 1979 alternative minimum tax, and we sympathize with petitioners in their struggle to understand this perhaps overly complex bit of legislation. We hold, however, that because petitioners' fiscal year began on August 1, 1978, they were still subject to the 15-percent add-on tax as in effect for taxable years beginning in 1978.

Petitioners contend, in the alternative, that their tax liability should be computed in accordance with the proration provisions of section 21. This provision, however, is not applicable to new taxes, but rather to changes in the rate of tax.

The Senate report (Revenue Act of 1978) expressly addresses this point:

> In general the provision is effective for taxable years beginning after 1978. In addition, the provision is not to be treated as a change of the rate of tax (under sec. 21 of the Code). Thus, fiscal year taxpayers are to first be subject to the new minimum tax for their taxable year beginning in 1979. [S. Rept. 95–1263, at 207 (1978), 1978–3 C.B. (Vol. 1) 315, 505.]

---

[2] Sec. 402 of the Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2763, 2867, amended sec. 1202 of the Internal Revenue Code of 1954.

This position was also adopted by the Conference Committee:

> In general, the conference agreement is effective for taxable years beginning after 1978. In addition, the provision is not to be treated as a change of the tax rate (under sec. 21 of the Code). Consequently, fiscal year taxpayers are to be subject first to the alternative minimum tax for their taxable years beginning in 1979. The conference agreement provisions changing the effective date for the capital gains preference (to 60 percent of net capital gain) for purposes of the present minimum tax is to apply for all sales and exchanges taking place after October 31, 1978. [H. Rept. 95–1800, at 268 (1978), 1978–3 C.B. (Vol. 1) 521, 602.]

In addition, section 21(f) (now repealed) expressly enumerated those changes made by the Revenue Act of 1978 to which it applied. The alternative minimum tax imposed by section 55 was not among the enumerated changes. Finally, section 1.21-1(d), Income Tax Regs., provides that section 21 does not apply to the imposition of a new tax, and section 1.21-1(k)(2), Income Tax Regs., provides that section 21 does not apply to the minimum tax.[3] Accordingly, we hold for respondent.

*Decision will be entered for the respondent.*

---

[3]These regulations do not reflect the changes made to sec. 56 by the Revenue Act of 1978, 92 Stat. 2795–2796, *supra*, or the Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 172.